UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

────────────────────────────────

DARREN FRENCH, also known as Daren French,

                              Plaintiff,                9:24-CV-0523
                                                        (GTS/MJK)
                v.

J. MONTGOMERY, Correctional Officer, et al.,

                              Defendants.

────────────────────────────────

APPEARANCES:                                OF COUNSEL:

DARREN FRENCH
Plaintiff, pro se
19-A-3870
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

GLENN T. SUDDABY
United States District Judge

## DECISION AND ORDER

### I.     INTRODUCTION

        The Clerk has sent to the Court for review a complaint filed by pro se plaintiff Darren

French ("plaintiff"), pursuant to 42 U.S.C. § 1983 ("Section 1983") and the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., asserting claims arising out of his

confinement in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS").  Dkt. No. 1 ("Compl.").  Plaintiff, who is presently confined at Green

Haven Correctional Facility ("Green Haven C.F."), has not paid the statutory filing fee and

seeks leave to proceed in forma pauperis ("IFP").  Dkt. No. 8 ("IFP Application").

## II.    IFP APPLICATION[1]

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

In *Adkins v. E.I. DuPont de Nemours, Inc.*, 335 U.S. 331 (1948), the United States Supreme Court held that one need not be absolutely destitute to enjoy the benefit of proceeding IFP.  *See also Lee v. McDonald's Corp.*, 231 F.3d 456, 458 (8th Cir. 2000).  An affidavit to proceed IFP is sufficient if it states that one cannot, because of his or her poverty, afford to pay for costs of litigation and still provide herself and her family the necessities of life.  *Adkins*, 335 U.S. at 339.  Proceeding IFP "is a privilege, not a right, and permission to so proceed is committed to the sound discretion of the court." *Camp v. Oliver,* 798 F.2d 434, 437 (11th Cir.1986); *accord, Weaver v. Toombs*, 948 F.2d 1004, 1008 (6th Cir.1991).

In lieu of a certified IFP application, plaintiff provided copies of his Green Haven C.F. Inmate Statements from September 30, 2023 through April 24, 2024 and June 1, 2024 through June 28, 2024.  Dkt. No. 8 at 3-11.  The Court accepts the submissions as "an institutional equivalent." *See Jones v. U.S.*, 100 Fed. Cl. 93, 95 (2011); §1915(a)(2) ("A

---

[1]  On April 16, 2024, plaintiff's initial IFP Application was denied and this action was administratively closed due to plaintiff's failure to submit a certified application in accordance with the Court's Local Rules.  Dkt. No. 3.  On May 1, 2024, plaintiff filed a second IFP Application (Dkt. No. 4) and the case was reopened.  In a Decision and Order filed on June 20, 2024, the Court denied the second IFP Application and afforded plaintiff another opportunity to comply with the filing fee requirements or submit an IFP application consistent with the Decision and Order.  Dkt. No. 7.  On July 23, 2024, plaintiff filed a third IFP Application.  Dkt. No. 8.

prisoner . . . shall submit a certified copy of the trust fund account statement (or institutional equivalent)."); *see also Allen v. LaSalle Cty. Jail*, 606 Fed. App'x 854, 855 (7th Cir. 2015) (concluding that the district court erred in failing to consider whether the inmate's computer printout was the institutional equivalent of an account statement).  In his IFP application, plaintiff states, under the penalty of perjury, that he is incarcerated, he does not receive benefits, and he has no income or property.  Dkt. No. 8.

Upon review of plaintiff's IFP Application, the Court finds that he has demonstrated sufficient economic need.  *See* 28 U.S.C. § 1915(a)(2);  Plaintiff has also filed the inmate authorization form required in this District.  *See* Dkt. No. 5.  Accordingly, the Court grants plaintiff's IFP Application (Dkt. No. 8).

## III.    DISCUSSION

### A.    Governing Legal Standard

Having found that plaintiff meets the financial criteria for commencing this action IFP, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A.  Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any

portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*. Thus, a pleading that contains only allegations which "are so vague as to fail to give the

defendants adequate notice of the claims against them" is subject to dismissal.  *Sheehy v. Brown*, 335 Fed. App'x 102, 104 (2d Cir. 2009).

The Court will construe the allegations in the complaint with the utmost leniency.  *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**B.    Summary of the Complaint[2]**

The complaint asserts allegations of wrongdoing that occurred, if at all, at Coxsackie Correctional Facility ("Coxsackie C.F.").  *See generally* Compl.  The following facts are set forth as alleged by plaintiff in his complaint.

On January 1, 2023, at approximately 6:00 p.m., plaintiff was involved in a physical altercation with another inmate.  Compl. at 5, 12.  Defendant Correctional Officer J. Montgomery ("Montgomery") searched plaintiff and "wheeled" plaintiff to Exam Room #2 in the medical department.  *Id.*

Defendant Sergeant Extrand ("Extrand") arrived and directed plaintiff to remove his clothing.  Compl. at 12.  Extrand threatened plaintiff with physical harm if he refused to obey the directive.  *Id.*  Plaintiff began to remove his clothing however, Montgomery became "upset" because plaintiff was in a wheelchair and could not move due to his "disability."  *Id.*  Plaintiff's pants and underwear fell to the floor and Montgomery "jumped on top" of plaintiff.  *Id.*

---

[2]  The complaint includes exhibits.  *See* Dkt. No. 1-1.  The Court will consider the complaint as well as any documents attached as exhibits.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

Defendants Correctional Officers John Doe #1 ("Doe 1") and John Doe #2 ("Doe 2") handcuffed and "subdued" plaintiff while Montgomery "choked" plaintiff.  Compl. at 13.  All three defendants began to "gang assault" plaintiff, while he was naked.  *Id*. at 13, 15.  Montgomery punched, pulled, and kicked plaintiff's testicles and put three fingers into plaintiff's throat.  *Id*. at 13.  The defendants verbally harassed and threatened plaintiff while taking turns attacking, kicking, and punching plaintiff.  *Id*.  As a result of the assault, which lasted five minutes, plaintiff was "laying in a pool of blood and urine."  Compl. at 13.

Plaintiff was transported to Albany Medical Center for treatment.  Compl. at 14.  The attending physician noted that the "suspected injuries" were a left radius ulna fracture, right orbital fractures, right mandibular fracture, left corneal abrasions, and a large scrotal laceration.  Dkt. No. 1-1 at 4.

Construed liberally[3], the complaint contains the following: (1) Eighth Amendment excessive force and failure-to-intervene claims; (2) Fourth Amendment claims; (3) First Amendment retaliation claims; (4) conspiracy claims; (5) ADA claims; and (6) state law claims.  *See* Compl. at 15-17.  For a complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the complaint.

## C.    Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution

---

[3] The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests.  S*ee, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp*., 885 F.Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted).  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

### 1. Eleventh Amendment

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); Hans v. Louisiana, 134 U.S. 1, 10-21 (1890).  Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009).  It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted in plaintiff's complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).  Actions for damages against a state

official in his or her official capacity are essentially actions against the state. *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

Plaintiff's claim for monetary damages pursuant to Section 1983 against defendants in their official capacities (*see* Compl. at 2-3), is barred by the Eleventh Amendment and dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). *See Kentucky v. Graham,* 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.").

### 2.  Eighth Amendment Claims

The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)).  The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*,

475 U.S. 312, 321–22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

Allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus,* No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, plaintiff's Eighth Amendment claims against Montgomery, Extrand, Doe #1, and Doe #2 survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.[4]

### 3. Fourth Amendment Claims

The Second Circuit and district courts within the Circuit have upheld routine random strip searches, including body-cavity inspections, performed on prison inmates. *See Covino v. Patrissi*, 967 F.2d 73, 76-80 (2d Cir. 1992); *see also Hurley v. Ward*, 584 F.2d 609, 612 (2d

---

[4] Service of process cannot be effect on plaintiff's excessive force claims asserted against corrections officer whose names are not known to plaintiff unless and until the individual(s) has been identified by name. If plaintiff wishes to pursue his claims against defendant Does, he must take reasonable steps to ascertain through discovery the identity of the individuals. Upon learning the identity of an unnamed defendant, plaintiff must amend the operative complaint to properly name the individual as a party. If plaintiff fails to ascertain the identity of the John Doe defendants so as to permit timely service of process, all claims against the individual will be dismissed.

Cir. 1978) (reversing portion of injunction prohibiting strip searches of prison inmates);

*Castro-Sanchez v. N.Y. State Dep't of Corr. Servs*., No. 10-CV-8314, 2011 WL 6057837, at

*9 (S.D.N.Y. Dec. 6, 2011) ("Routine random strip searches of inmates, including body cavity

inspections, do not violate the Fourth Amendment.").  Assessing the reasonableness of a

strip search "requires a balancing of the need for the particular search against the invasion of

personal rights that the search entails.  Courts must consider the scope of the particular

intrusion, the manner in which it is conducted, the justification for initiating it, and the place in

which it is conducted."  *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).  Where an "isolated search

is challenged as unreasonable," courts typically consider the scope of the intrusion, the

manner in which it was conducted, the justification for initiating it, and the place in which it

was conducted.  *Wilmot-Francis v. Giordano*, No. 9:23-CV-1535 (MAD/DJS), 2024 WL

2320103, at *3 (N.D.N.Y. May 22, 2024) (citations omitted).

   An inmate bears the burden of showing that a search was unreasonable, *Shabazz v.*

*Pico*, 994 F.Supp. 460, 473 (S.D.N.Y. 1998), so at the pleading stage, a plaintiff must "plead

facts sufficient to give rise to a plausible inference" that the search he challenges was

unreasonable under the standards described above.  *Simmons v. Cripps*, No. 12-CV-1061,

2013 WL 1290268, at *21 (S.D.N.Y. Feb. 15, 2013), *report and recommendation adopted by*

2013 WL 1285417 (S.D.N.Y. Mar. 28, 2013).

   In this case, the complaint is devoid of any allegations which plausibly suggest that the

strip search was conducted in an unreasonable manner, was not justified, or took place in an

inappropriate location.  To the contrary, the allegations in the complaint suggest that the

search was performed in a private room by corrections officer with no other officials present.

The unlawful search claim is based solely on the fact that plaintiff was subjected to a strip

search, which is insufficient to state a Fourth Amendment claim.  *See Bell,* 441 U.S. at 558 (holding that strip and body cavity searches of prisoners are not per se violations of the Fourth Amendment, which only prohibits "unreasonable searches"); *Castro-Sanchez*, 2011 WL 6057837, at *9.

Accordingly, plaintiff's Fourth Amendment illegal search claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. First Amendment – Retaliation

To state a claim of retaliation under the First Amendment, an inmate must allege facts plausibly suggesting "the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' "  *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

The Second Circuit has defined "adverse action objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights."  *Gill,* 389 F.3d at 381 (emphasis in original).  The objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights.  *Id*.

"A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action."  *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001).  While there is no "bright line ... defin[ing] the outer limits" of the "temporal relationship," courts in the Second Circuit have held that an adverse action taken as much as eight months after the protected activity indicated a causal connection.  *Grant v.*

*Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980); *but see Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's protected activity, was in response to it).

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491.

Here, plaintiff states, in a wholly conclusory manner, without any factual support, that Montgomery and Extrand retaliated against him.  *See* Compl. at 17.   The complaint lacks facts plausibly suggesting that plaintiff engaged in protected conduct, how or when defendants became aware of the protected conduct or why defendants were motivated to retaliate against him.

At this juncture, plaintiff's First Amendment retaliation claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5.  Conspiracy Claims

A conspiracy claim under § 1983 must allege that: (1) an agreement existed between two or more state actors to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal.  *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002).  Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed.  *Id.* at 325.

Plaintiff does not assert any facts giving rise to a conspiracy, but instead makes conclusory statements that defendants conspired with each other.  *See* Compl. at 14. Plaintiff's conclusory allegations do not support a "meeting of the minds" or a plausible conspiracy claim involving any of the Defendants.  "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be enough to raise a right to relief above the speculative level." *Dorsey v. Fisher*, No. 09-CV-1011, 2009 WL 4985421, at *3 (N.D.N.Y. Dec. 15, 2009) (citations omitted); *see Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds").

Accordingly, plaintiff's conspiracy claims are dismissed without prejudice for failure to state a claim.  *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011).

### 6.  ADA Claims[5]

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of . . . a public entity, or be subjected to discrimination by any such entity." *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (citing 42 U.S.C. § 12132).  The ADA is applicable to inmates in state correctional facilities.  *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). "Under Title II of the ADA ... prison officials may not discriminate against inmates on the basis of disability in administering work programs." *Harrington v. Vadlamudi*, No. 9:13-CV-795 (BKS/RFT), 2015 WL 4460994, at *3 (N.D.N.Y. July 21, 2015) (citations omitted).

In order to establish a prima facie violation under the ADA, plaintiff must show that 1) he is a qualified individual with a disability; 2) the defendant is an entity subject to the acts;

---

[5]  Plaintiff does not specify what portions of the ADA are triggered.  Reading the complaint liberally, it appears that he brings this action under Title II.

and 3) he was denied the opportunity to participate in or benefit defendants' services, programs, or activities or defendants otherwise discriminated against him by reason of his disability.  *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

Title II of the ADA does not provide for individual capacity suits for monetary damages. *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Where, as here, a plaintiff seeks monetary damages against individuals in their official capacities, *see* Compl. at 2-3, the plaintiff must plead that the defendant "was motivated by discriminatory animus or ill-will based on the plaintiff's disability."  *See Keitt v. New York City,* 882 F.Supp.2d 412, 455-57 (S.D.N.Y. 2011) (holding that under *Garcia*, claims for money damages against state officials in their official capacities under Title II of the ADA are barred by the Eleventh Amendment, absent a showing that a violation was motivated by discriminatory animus or ill will due to the disability) (citing *Garcia,* 280 F.3d at 112).

Here, plaintiff's cursory reference to his disability, see Compl. at 12, is insufficient to state a claim under the ADA.  The complaint lacks any facts related to plaintiff's disability and, in fact, plaintiff does not claim that he is being denied from participation in services, programs or activities due to a disability.  Accordingly, to the extent that plaintiff is attempting to assert a claim under the ADA, these claims are dismissed for failure to state a claim upon which relief can be granted.

Moreover, even assuming plaintiff suffers from injuries that are eligible for Title II protection, the complaint lacks facts suggesting that any official was motived by discriminatory animus or ill will due to his disability.  Plaintiff's claims are deficient because he fails to allege that he was treated differently than other inmates because of his disability.  *See Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514 at *19 (S.D.N.Y. Aug. 2, 2013)

("[T]he Court need not engage in an extensive analysis of the ADA requirements because Plaintiff makes absolutely no allegation that he was discriminated against, or that Defendants failed to provide him with a reasonable accommodation [. . . ] because of his disability[.]") (citing *Henrietta D. v. Bloomberg*, 331 F.3d. 261, 278 (2d Cir. 2003)) (stating that an ADA plaintiff must demonstrate that a denial of benefits occurred "because of" the disability).

Accordingly, plaintiff's ADA claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 7.  State Law Claims

While New York recognizes a private cause of action for violations of the New York State Constitution, *Brown v. State*, 89 N.Y.2d 172, 192 (1996), a private cause of action is only available "where the plaintiffs have no alternative remedies that would protect their interests."  *Vilkhu v. City of New York*, No. 06-CV-2095, 2008 WL 1991099, at *8 (E.D.N.Y. May 5, 2008) (citations omitted).

Plaintiff claims defendants violated Article I, §§ 5, 8, 9, and 12 of the New York State Constitution.  *See generally* Am. Compl.  In light of the dismissal of plaintiff's federal claims related to the strip search and retaliation claims, the Court declines to exercise supplemental jurisdiction over claims related to violations of Article I, §§ 8, 9, and 12.  *See* 28 U.S.C. § 1367(c)(3); *Valencia*, 316 F.3d at 306; *see also Hamilton v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312 (MAD/CFH), 2019 WL 2352981, at *19 (N.D.N.Y. June 4, 2019).

Plaintiff's Eighth Amendment claims survive sua sponte review.  Thus, a duplicative private right of action under Article I, § 5 is not necessary to protect plaintiff's interests.  *See*

*Flores v. City of Mount Vernon*, 41 F.Supp.2d 439, 446-47 (S.D.N.Y. 1999) ("Plaintiff's Tenth and Eleventh Claims are dismissed with respect to the municipal defendants because no private right of action exists for violations of the New York State Constitution where a Plaintiff has alternative damage remedies available, as Mrs. Flores does under her § 1983 claim."); *Hamilton*, 2019 WL 2352981, at *19) ("[B]ecause Plaintiff has viable First and Fourteenth Amendment Equal Protection claims under section 1983, Plaintiff's state law claims are dismissed because there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983.").

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP application (Dkt. No. 8) is **GRANTED**.[6]  The Clerk shall provide the superintendent of the prison facility in which plaintiff is currently confined with a copy of plaintiff's inmate authorization form (Dkt. No. 5) and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee $350.00 pursuant to 28 U.S.C. § 1915;[7] and it is further

**ORDERED** that the Clerk shall provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which

---

[6]  Plaintiff should note that, although his IFP application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[7]  While Section 1915 permits indigent litigants to commence a civil action in federal court without prepayment of the filing fee, those litigants "must subsequently pay the fee, to the extent [they are] able to do so, through periodic withdrawals from [their] inmate accounts."  *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris*, 607 F.3d at 21).

relief may be granted:  (1) Fourth Amendment claims; (2) First Amendment retaliation claims; (3) conspiracy claims; (4) ADA claims; and (5) state law claims; and it is further

**ORDERED** that the Eight Amendment claims survive this Court's review and require a response; and it is further

**ORDERED** that upon receipt of the documents for service, the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon the defendants.  The Clerk shall forward a copy of the summonses and complaint to the Office of the Attorney General, together with a copy of this Decision and Order by electronic mail only; and it is further

**ORDERED** that defendants or counsel, shall file a response to the complaint as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel.  Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.**  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any**

**change in his address; their failure to do so will result in the dismissal of his action;**

and it is further

 **ORDERED** that plaintiff shall take reasonable steps through discovery to ascertain the

identity of defendants John Does 1 and 2, against whom plaintiff's excessive force claims are

asserted.  Plaintiff's failure to timely serve those defendants will result in dismissal of the

claims asserted against them and termination of those defendants from the action; and it is

further

 **ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on

plaintiff in accordance with the Local Rules of Practice.


Dated: August 30, 2024
  Syracuse, New York

          Glenn T. Suddaby
          U.S. District Judge